NORTHWEST LUMBER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 10650, 15310. Promulgated January 9, 1928.

*John E. Hughes, Esq., Forrest E. Ferguson, Esq.*, and *E. J. Miner, Esq.*, for the petitioner.
*Granville S. Borden, Esq.*, for the respondent.

OPINION.

· LANSDON: Issues 1, 3, and 4, as set forth in our preliminary statement, having been settled by a stipulation of the parties which we

have accepted, the only matter left for our consideration is the correct amount of annual deductions from its gross income for each of the taxable years to which the petitioner is entitled for depletion of its timber reserves due to its annual logging operations. The parties have stipulated the quantities of timber cut in each of the taxable years and it remains only for us to determine the basis for the computation of depletion for each of such years.

The respondent and petitioner are in substantial agreement that the timber lands and timber rights in question were acquired in 1907 at a cost of $1,950,000, the mill and other depreciable assets at a cost of $50,000, and that the land so acquired had no value. The respondent determined the deficiencies here in controversy on the basis of a value at March 1, 1913, which is less than cost and in support of such action relies on the provisions of section 234 (a) (9) of the Revenue Acts of 1918 and 1921, which are as follow:

(a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

\*     \*     \*     \*     \*     \*     \*

(9) In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted: *Provided*, That in the case of such properties acquired prior to March 1, 1913, the fair market value of the property (or the taxpayer's interest therein) on that date shall be taken in lieu of cost up to that date:     \*     \*     \*

The petitioner contends, first, that the market value of its timber at March 1, 1913, was greater than cost, and, second, that if we should find that the value at the basic date was less than cost, it is entitled to have its annual depletion deductions determined on the basis of cost. We shall first consider the petitioner's contention that at March 1, 1913, the average unit value of its timber was in excess of the cost thereof.

In support of its contention of value greater than cost the petitioner adduced evidence upon which we have found as fact that its timber was of a higher quality than the average in the Puget Sound district; that logs produced therefrom sold at premiums that averaged $2 per 1,000 board measure feet; that it was located on the main line of a railway and was distant only 35 miles from market; that the timber stand per acre averaged nearly double that of the district tributary to the Puget Sound market; that all but 16 per cent of the timber stand consisted of the most valuable species found in that territory; that about 75 per cent of the fir, spruce and cedar cut into the better grades of lumber; that the prices for the products of the petitioner averaged $1 more per 1,000 board measure feet on the Puget Sound lumber market than were paid for similar grades of lumber in the

Columbia River market; and that between 1907 and 1913 stumpage in the Puget Sound district increased in value from 50 to 75 cents per 1,000 board measure feet.

In further support of its contention, the petitioner introduced a number of experienced lumber and timber operators as expert witnesses. All were familiar with lumbering conditions in the State of Washington, well acquainted with the tract and timber in question and conversant with the processes of logging, manufacturing and marketing timber. The expert opinions of value of the petioner's timber at March 1, 1913, varied from $4.75 to $5.25 per 1,000 board measure feet.

The respondent proved some sales of alleged similar timber lands at prices that support his contention of an average unit value of $3.25 at March 1, 1913. Upon cross-examination it appeared, however, that such sales were of small and isolated tracts and that the prices obtained were not a fair measure of the value of large timber areas easily accessible for logging and located on lines of transportation to nearby markets. In his brief, counsel for the respondent calls attention to the weakness of opinion evidence, although it is obvious that his determination of these deficiencies and the record that he made at the hearing rest almost entirely on such evidence.

A careful study of all the evidence adduced by the parties convinces us that the petitioner has sustained the burden of proving that the average unit value of the standing timber in which it owned an interest at March 1, 1913, was greater than cost and was $4.75 per 1,000 board measure feet. Inasmuch as the record discloses that approximately 72 per cent of such timber was subject to a royalty charge of 70 cents per 1,000 board measure feet, it is obvious that the total value and the corresponding unit value of all the timber in question must be reduced by the amount of such royalty charge before the value of the petitioner's interest therein can be ascertained.

The evidence shows that the petitioner owned 960 acres of the tract in question in fee, the right to cut and remove without further payment all the timber on 1,680 acres owned by various persons, and the right to cut and remove all the timber on 6,840 acres owned by the Northern Pacific Railway subject to a royalty charge of 70 cents per 1,000 board measure feet. It is also established by proof that the average stand of timber throughout the tract was uniform. We conclude that the royalty due the Northern Pacific Railway for cutting the timber on its lands, if applied to the entire tract, would result in an average charge of 60 cents per 1,000 board measure feet. We are of the opinion, therefore, that the average unit value of the petitioner's interest in the standing timber in question at March 1, 1913, was $4.15 per 1,000 board measure feet, which we hold is a reasonable basis for the computation of the annual deduction from gross in-

come to which the petitioner is entitled on account of depletion. Cf. *Charles P. Hewes*, 2 B. T. A. 1279; *California Delta Farms, Inc.*, 6 B. T. A. 1301.

In addition to the royalty charge of 70 cents per 1,000 board measure feet, the Northern Pacific contract imposes a considerable body of obligations on each of the parties thereto. We assume that their reciprocal undertakings were mutually advantageous and so have no bearing on the value of the timber. Since the parties are in substantial agreement that the land owned by the petitioner has no market value after the removal of the timber we do not regard such land as a factor in determining the reasonable deductions for depletion to which the petitioner is entitled. A part of the purchase price of the property in the amount of $94,548.47 was payable without interest as the timber was cut. We regard this amount as part of the original capital investment and not as a royalty charge. It is not a factor in the determination of the value of the petitioner's interest in the standing timber at March 1, 1913. Having decided that the March 1, 1913, value of the petitioner's interest in the standing timber was greater than cost thereof, it is not necessary to decide the question of law upon which the parties disagree.

*Judgment will be entered on 20 days' notice, under Rule 50.*

Considered by STERNHAGEN, GREEN, and ARUNDELL.